# Illinois Official Reports

## Appellate Court

---

**Bayview Loan Servicing, LLC v. Szpara**, 2015 IL App (2d) 140331

---

| | |
|---|---|
| Appellate Court Caption | BAYVIEW LOAN SERVICING, LLC, Plaintiff and Counterdefendant-Appellee, v. DOMINIK SZPARA and LIDIA SZAREK, Defendants and Counterplaintiffs-Appellants (Unknown Owners and Nonrecord Claimants, Defendants). |
| District & No. | Second District<br>Docket No. 2-14-0331 |
| Rule 23 order filed<br>Rule 23 order withdrawn<br>Opinion filed | November 12, 2014<br><br>December 30, 2015<br>December 30, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 11-CH-3939; the Hon. Robert G. Gibson, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Charles A. Silverman, of Charles Aaron Silverman, P.C., of Chicago, for appellants.<br><br>Louis J. Manetti Jr., of Codilis & Associates, P.C., of Burr Ridge, for appellees. |

JUSTICE SPENCE delivered the judgment of the court, with opinion.
                          Justices Zenoff and Burke concurred in the judgment and opinion.


**OPINION**

¶ 1        Plaintiff, JPMorgan Chase Bank, NA,[1] filed a complaint to foreclose the mortgage on the
property of defendants, Dominik Szpara and Lidia Szarek, at 122 East Lincoln Avenue,
Glendale Heights, Illinois (Property). Defendants answered the complaint and raised four
affirmative defenses and one counterclaim. Plaintiff moved to strike three of the affirmative
defenses and the counterclaim; one affirmative defense and the counterclaim were struck with
prejudice, and two affirmative defenses were struck without prejudice. Defendants amended
those two affirmative defenses. The two amended affirmative defenses were subsequently
struck with prejudice.

¶ 2        Plaintiff moved for summary judgment, and defendants responded by attacking the
sufficiency of plaintiff's prove-up affidavit for the amounts due. The court granted summary
judgment for plaintiffs. Defendants now appeal the entry of summary judgment, the order
approving the sale, and the order striking their amended affirmative defenses. For the reasons
stated herein, we affirm.


¶ 3                                      I. BACKGROUND
¶ 4        Defendants obtained a mortgage on the Property on June 22, 2006, from Washington
Mutual Bank, FA. On March 29, 2011, defendants filed a chapter 7 bankruptcy petition in the
Northern District of Illinois, case No. 11-12966. On April 15, 2011, the district court granted
plaintiff relief from the automatic stay.

¶ 5        On August 17, 2011, plaintiff filed a complaint to foreclose the mortgage on the Property.
The complaint alleged that defendants had failed to pay monthly installments due since July 1,
2010.

¶ 6        Defendants filed their answer on June 7, 2012. The answer contained four affirmative
defenses: (1) plaintiff failed to send defendants an acceleration letter prior to filing its
complaint, a condition precedent to foreclosure; (2) plaintiff violated section 15-1502.5 of the
Code of Civil Procedure (Code) (735 ILCS 5/15-1502.5 (West 2010)) by failing to send a
grace-period notice prior to filing its complaint, which voided the foreclosure and the sale; (3)
the broker, who was also the appraiser, committed fraud in the inducement by inflating the
appraisal price in order to obtain a larger commission as well as by inflating defendants' assets,
thereby voiding the mortgage lien; and (4) alternatively, in light of the broker's conduct, the
action was barred by equitable estoppel. Defendants also included a counterclaim to quiet title,
alleging again that the broker inflated the appraisal for personal gain and inflated defendants'
assets. They further alleged that they were not fluent in English and therefore could not
understand that the broker was acting dishonestly.

---

[1]Bayview Loan Servicing, LLC, was substituted for JPMorgan Chase Bank, NA, as plaintiff in this
action in a March 11, 2014, order. For simplicity's sake, we shall refer to the two entities collectively as
plaintiff.

¶ 7 On August 31, 2012, plaintiff replied to defendants' first affirmative defense, denying that it failed to send an acceleration letter. It also filed a motion to strike defendants' second, third, and fourth affirmative defenses and their counterclaim to quiet title. After the matter was briefed, the trial court entered a November 7, 2012, order striking defendants' second affirmative defense and their counterclaim with prejudice and striking defendants' third and fourth affirmative defenses without prejudice.

¶ 8 On December 6, 2012, defendants filed amended third and fourth affirmative defenses. In defendants' amended third affirmative defense, they alleged the following to support fraud in the inducement: the broker was also the appraiser of the Property, creating a conflict of interest; defendants never received a copy of the appraisal; the broker inflated defendants' assets; defendants did not speak fluent English; and therefore plaintiff was estopped from enforcing their lien. The amended fourth affirmative defense, equitable estoppel, contained allegations identical to those in the amended third affirmative defense.

¶ 9 On December 26, 2012, plaintiff filed a motion to strike defendants' amended affirmative defenses. Plaintiff argued that the amended affirmative defenses were not well pleaded, containing conclusory allegations insufficient to support fraud in the inducement or equitable estoppel. Furthermore, plaintiff argued that, under the terms of the purchase and assumption agreement (PAA), which it entered into with the Federal Deposit Insurance Corporation (FDIC), as receiver for Washington Mutual Bank, on September 25, 2008, plaintiff explicitly disclaimed liability to defendants arising from Washington Mutual Bank's prior conduct, even if defendants raised their claims affirmatively or defensively.

¶ 10 On January 8, 2013, the trial court entered an order stating that it took judicial notice of the PAA. The court therein also granted plaintiff's motion to strike, striking the amended third and fourth affirmative defenses with prejudice.

¶ 11 On August 30, 2013, plaintiff filed its motion for summary judgment. Defendants responded, arguing primarily that plaintiff's prove-up affidavit for the amounts due and owing on the mortgage loan was insufficient. They argued that the affidavit, of plaintiff's vice president Rosalva Cardenas, lacked a foundation as a business record because she lacked personal knowledge of the pertinent records and that the affidavit thus relied on inadmissible hearsay. Plaintiff replied that there was a proper foundation for the affidavit and that defendants did not challenge anything else in the affidavit, such as the actual amounts owing.

¶ 12 On November 6, 2013, the trial court granted a summary judgment of foreclosure and sale in plaintiff's favor.

¶ 13 The judicial sale of the property occurred on February 11, 2014. Plaintiff filed a motion for confirmation of the sale on February 19, 2014. On March 11, 2014, the trial court granted the motion and confirmed the sale.

¶ 14 Defendants timely appealed.[2]

---

[2]The notice of appeal stated that the appeal was being taken from "the following Order or Judgment: 1/8/13 Order Striking Affirmative Defenses, 11/6/13 Order granting Summary Judgment for Plaintiff, and 3/11/14 Order Approving Sale."

## II. ANALYSIS

### A. Standard of Review

Defendants' affirmative defenses and counterclaim were struck pursuant to sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2012)). We review *de novo* dismissals under these sections of the Code. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009).

We also review *de novo* an order granting summary judgment. *Chatham Foot Specialists, P.C. v. Health Care Service Corp.*, 216 Ill. 2d 366, 376 (2005). Plaintiff argues, however, that because the trial court's determination of whether the prove-up affidavit was based on admissible evidence was within its sound discretion, we should review the grant of summary judgment for an abuse of discretion. We reject this argument because, although "[i]n general, this court reviews a circuit court's decision on a motion to strike an affidavit for an abuse of discretion, *** when the motion 'was made in conjunction with the court's ruling on a motion for summary judgment,' we employ a *de novo* standard of review with respect to the motion to strike." *US Bank, National Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 18 (quoting *Jackson v. Graham*, 323 Ill. App. 3d 766, 773 (2001)). Here, there was no specific motion to strike the affidavit, but in substance the argument was that the affidavit could not support summary judgment because it failed to comply with Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013) and thus should not be considered. Accordingly, we review *de novo* the grant of summary judgment in conjunction with the consideration of the prove-up affidavit. See *Jackson*, 323 Ill. App. 3d at 774 ("[W]hen the trial court rules on a motion to strike a Rule 191 affidavit in conjunction with a summary judgment motion, we review *de novo* the trial court's ruling on the motion to strike.").

### B. Motions to Strike

Defendants argue that the trial court erred in striking their second affirmative defense, their amended third and fourth affirmative defenses, and their counterclaim to quiet title. We address the affirmative defenses and the counterclaim in turn.

#### 1. Second Affirmative Defense

Defendants first argue that the trial court improperly struck their second affirmative defense, that plaintiff violated section 15-1502.5 of the Code by failing to send a grace-period notice to them prior to filing its complaint.

Section 15-1502.5 requires a mortgagee to send notice via United States mail advising the mortgagor to seek approved housing counseling if the mortgage becomes more than 30 days delinquent, "[e]xcept for mortgages secured by residential real estate in which any mortgagor has filed for relief under the United States Bankruptcy Code." 735 ILCS 5/15-1502.5(c) (West 2010).

Here, defendants claim that they filed for bankruptcy on March 29, 2011, after plaintiff initiated its foreclosure action on March 23, 2011. Therefore, they claim, the exception in section 15-1502.5(c) quoted above did not apply, and plaintiff was required to send them the notice.

Plaintiff responds as follows. First, this court does not have jurisdiction to entertain an appeal of the striking of defendants' second affirmative defense (and, for the same reasons, the striking of their counterclaim). Defendants' notice of appeal lists three specific orders from

which they appeal: the January 8, 2013, order, in which the court struck their amended third and fourth affirmative defenses with prejudice; the November 6, 2013, order granting summary judgment[3]; and the March 11, 2014, order confirming the sale of the Property. Under Illinois Supreme Court Rule 303(b)(2) (eff. May 30, 2008), we lack jurisdiction to review judgments or parts of judgments not specified in or inferred from the notice of appeal. See *Fitch v. McDermott, Will & Emery, LLP*, 401 Ill. App. 3d 1006, 1014 (2010). Moreover, the striking of the second affirmative defense and the counterclaim was not a step in the procedural progression leading to the judgments specified in the notice of appeal. See *Illinois Central Gulf R.R. Co. v. Sankey Brothers, Inc.*, 78 Ill. 2d 56, 61 (1979) (holding that appellate court properly ruled that dismissal of defendant's counterclaim in December 1977 was not before it when defendant's notice of appeal sought review only of summary judgment in April 1978 and did not mention the earlier dismissal order).

¶ 26 We agree with plaintiff that defendants' second affirmative defense is not properly before us on appeal. The order striking defendants' second affirmative defense (and counterclaim) with prejudice was entered on November 7, 2012. That order is not specified in defendants' notice of appeal. While an unspecified judgment is reviewable if it is a step in the procedural progression leading to the judgment specified in the notice of appeal (*Village of Lisle v. Village of Woodridge*, 192 Ill. App. 3d 568, 572 (1989)), the striking of the second affirmative defense was not part of the procedural progression here (see *Edward E. Gillen Co. v. City of Lake Forest*, 221 Ill. App. 3d 5, 11 (1991) (dismissal of earlier counts of a complaint is not a step in "procedural progression" (internal quotation marks omitted)); see also *Dalen v. Ozite Corp.*, 230 Ill. App. 3d 18, 24 (1992) (matters outside the scope of the cause at issue are not part of the procedural progression)). The second affirmative defense alleged that plaintiff violated section 15-1502.5 of the Code by failing to send a grace-period notice. This was an isolated issue outside of the procedural progression to any judgment specified in the notice of appeal.

¶ 27 Regardless, the dispute over the striking of the second affirmative defense comes down to a disagreement over when plaintiff instituted its action for foreclosure. Defendants argue that plaintiff filed its action on March 23, 2011, before they filed for bankruptcy on March 29, 2011. As plaintiff argues, and as the record supports, it filed its action on August 17, 2011, almost five months after defendants filed for bankruptcy. Accordingly, even if the issue were properly before us, plaintiff had no obligation to send defendants notice under section 15-1502.5 of the Code (735 ILCS 5/15-1502.5 (West 2010)).

¶ 28                    2. Amended Third and Fourth Affirmative Defenses

¶ 29 Defendants argue that they pled their amended third and fourth affirmative defenses–fraud in the inducement and equitable estoppel, respectively–with sufficient specificity and particularity. Regarding fraud in the inducement, defendants argue that they properly pled the defense by stating: they were led to believe that the appraiser of the Property was an independent contractor, not an employee of the mortgage broker's office; plaintiff knew of this misrepresentation; plaintiff failed to disclose this conflict of interest; defendants trusted plaintiff despite not receiving a copy of the appraisal; and defendants were injured when they found out that the Property was worth less than its appraised value. Regarding equitable

---

[3]In defendants' response to the motion for summary judgment, they did not argue that their second affirmative defense or counterclaim should preclude summary judgment.

- 5 -

estoppel, defendants reiterate the aforementioned allegations and additionally cite *First Mortgage Co. v. Dina*, 2014 IL App (2d) 130567, ¶ 25, to say that, where a public-policy reason supports voiding a mortgage, a technical flaw in the way a defendant raised a defense does not result in forfeiture of the defense.

¶ 30 Plaintiff responds that defendants' amended third and fourth affirmative defenses, as well as their counterclaim, were barred by the PAA. Moreover, plaintiff argues that the amended defenses were properly stricken for failure to meet the appropriate pleading standard.

¶ 31 We agree with plaintiff with respect to both the PAA and the sufficiency of defendants' pleadings. The trial court took judicial notice of the PAA, which is a public document, and we do so as well. See *Country Cos. v. Universal Underwriters Insurance Co.*, 343 Ill. App. 3d 224, 229 (2003) (the appellate court may take judicial notice of public records regardless of whether the records were before the trial court). Article II, section 2.5, of the PAA reads:

> "Borrower Claims. Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower *** whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by the Failed Bank prior to failure *** or otherwise arising in connection with the Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank."

The "Failed Bank" here was Washington Mutual Bank, and the "Assuming Bank" was plaintiff.

¶ 32 The plain language of the PAA states that plaintiff did not assume any liability to defendants arising from their original loan with Washington Mutual Bank, including claims asserted defensively or affirmatively, and other courts have found that such language in a purchase and assumption agreement bars borrower claims against the purchasing bank. See *Baginski v. JP Morgan Chase Bank N.A.*, No. 11 C 6999, 2012 WL 5989295, at *5 (N.D. Ill. Nov. 29, 2012) (section 2.5 of the purchase and assumption agreement between Chase and the FDIC broadly excluded borrower claims from the liabilities assumed by Chase, and thus borrower could not pursue a fraud claim against Chase that arose before Chase assumed the loan); see also *Yeomalakis v. Federal Deposit Insurance Corp.*, 562 F.3d 56, 60 (1st Cir. 2009) (plaintiff-borrower's motion to substitute Chase as a party failed because the agreement Chase signed with the FDIC when it acquired the relevant assets excluded assumption of liability for borrower claims). Defendants acquired their mortgage loan in June 2006, and plaintiff purchased Washington Mutual Bank's assets in September 2008. Defendants' original third and fourth affirmative defenses were based on allegations of wrongdoing at the origination of the mortgage loan, and the amended affirmative defenses did not specify a time but instead referenced an unspecified "refinancing." Given defendants' sparse allegations, the record does not support that their claim for fraud or equitable estoppel arose, if at all, after the PAA. Accordingly, the PAA bars defendants' amended affirmative defenses from being asserted against plaintiff.

¶ 33 Moreover, we agree with plaintiff that the amended third and fourth affirmative defenses were properly stricken because their allegations were conclusory. The amended third defense, fraud in the inducement, alleged:

> "1. Defendants were current on their previous loan.

2. Defendants were approached by a mortgage broker to re-finance their home loan.

3. Another lender agreed to use said mortgage broker to lend money to Defendants pursuant to a refinancing of their home.

4. Before closing, it became apparent to lender that the broker was also the appraiser of the new home loan.

5. Therefore there was a conflict of interest with this loan.

6. Defendants were never given a copy of their appraisal.

7. Broker also inflated Defendants' assets.

8. Defendants are not fluent in English.

9. Due to said broker's actions in creating this bogus lien, Plaintiff is estopped from enforcing their bogus lien.

10. Defendants specifically deny the deemed allegations of 735 ILCS 5/15-1504(c)(1) and 735 ILCS 5/15-1504(c)(7)."

¶ 34   Fraud in the inducement is a form of common-law fraud. *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 17 (1995). The elements of fraud are: (1) a false statement of material fact; (2) knowledge or belief of the statement's falsity; (3) intent to induce the plaintiff to act or refrain from action on the falsity of the statement; (4) the plaintiff reasonably relied on the false statement; and (5) damage from such reliance. *Id.* Moreover, there is "a high standard of specificity for pleading claims of fraud." *Janowiak v. Tiesi*, 402 Ill. App. 3d 997, 1006 (2010). "A complaint for common-law fraud 'must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made.' " *Aasonn, LLC v. Delaney*, 2011 IL App (2d) 101125, ¶ 28 (quoting *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496-97 (1996)). "Conclusory allegations are insufficient." *Id.*

¶ 35   Here, the allegations in the amended third affirmative defense were conclusory and thus properly stricken. Defendants did not specify what misrepresentations plaintiff made but stated only that the broker "inflated Defendants' assets." They did not specify what the appraised value of the Property or their assets was or what it should have been. They failed to name the broker and failed to state when the alleged misrepresentations took place. They hinted that they relied on the broker's representations because they were not fluent in English, but such intimations do not comport with fraud's heightened pleading standards. They finally failed to allege that the broker knew or believed that the alleged misrepresentations were false when she made them.

¶ 36   Turning to the amended fourth affirmative defense, equitable estoppel, its allegations were identical to those in the fraud in the inducement defense. Equitable estoppel is an equitable doctrine "invoked to prevent fraud and injustice" (*Carey v. City of Rockford*, 134 Ill. App. 3d 217, 218 (1985)) "by precluding a party from benefiting from its own wrongdoing" (*Tegeler v. Industrial Comm'n*, 173 Ill. 2d 498, 505 (1996)). The elements of equitable estoppel are:

"(1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his

or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof." *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313-14 (2001). For the same reasons that defendants failed to properly plead fraud, defendants failed to plead sufficient facts to demonstrate all the elements of equitable estoppel, including facts to demonstrate that the broker knew that the representations were untrue when they were made and that defendants did not. Moreover, defendants argue that, where a public-policy reason exists to void a mortgage, technical flaws in raising a defense should not forfeit the defense, but defendants have not identified any public-policy reason for voiding the mortgage, and we do not further consider this argument.

¶ 37                                   3. Counterclaim

¶ 38     We have already decided that defendants' second affirmative defense is not properly before us because the notice of appeal did not specify the order striking it and the order was not a step in the procedural progression leading to a specified order. Likewise, defendants' counterclaim is not properly before us. The trial court disposed of the counterclaim with prejudice in the same order that struck the second affirmative defense. The counterclaim also raised an isolated issue outside of the procedural progression to any specified order. The counterclaim, while based on allegations similar to those in the amended third and fourth affirmative defenses (primarily, the allegation that the broker was also the appraiser), was likewise unrelated to the ruling striking the amended affirmative defenses or to either of the other specified orders.[4]

¶ 39     Because the counterclaim is not properly before us, we need not consider whether defendants had standing to bring their counterclaim after filing for bankruptcy.

¶ 40                           C. Motion for Summary Judgment

¶ 41     Defendants next argue that the entry of summary judgment was inappropriate because plaintiff's prove-up affidavit was insufficient pursuant to Rule 191 and thus there was an issue of material fact. Defendants attack the sufficiency of the prove-up affidavit as follows. Cardenas stated that she "had access" to the business records related to defendants' loan and had personal knowledge of how the records were created and maintained. The affidavit did not mention how the records were created or maintained or by whom. Under Illinois Supreme Court Rule 236 (eff. Aug. 1, 1992), a business record may be admitted into evidence as an exception to hearsay if the record was made in the regular course of business, but a foundation must be laid to establish an affiant's personal knowledge of the record. See *In re Estate of Teall*, 329 Ill. App. 3d 83, 92 (2002). An affidavit must not state facts on information and belief (see *Fooden v. Board of Governors of State Colleges & Universities*, 48 Ill. 2d 580, 587 (1971)), and an affidavit must contain facts stated with particularity to support its conclusions

---

[4]Even if the counterclaim were properly before us, we have already decided that the amended third and fourth affirmative defenses, based on the allegations that the broker inflated the value of the Property and defendants' assets, were properly stricken for failing to allege sufficient facts and were barred by the PAA. Likewise, the counterclaim, based on the same sparse allegations, was both properly stricken as conclusory and barred by the PAA.

(*Steiner Electric Co. v. NuLine Technologies, Inc.*, 364 Ill. App. 3d 876, 881 (2006)). Here, defendants argue, because plaintiff's affidavit failed to establish a proper foundation with specific facts but rather contained "bald assumptions" and conclusions, the business-records exception did not apply and the motion for summary judgment should have been denied.

¶ 42    Plaintiff responds as follows. Rule 236[5] states:

"(a) Any writing or record, whether in the form of any entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of the act, transaction, occurrence, or event, if made in the regular course of any business, and if it was the regular course of the business to make such a memorandum or record at the time of such an act, transaction, occurrence, or event or within a reasonable time thereafter. *All other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but shall not affect its admissibility*." (Emphasis added.) Ill. S. Ct. R. 236 (eff. Aug. 1, 1992).

The foundation necessary under Rule 236 is only that the party tendering the record demonstrates that the record was made in the regular course of business and at or near the time of the transaction. *In re Estate of Weiland*, 338 Ill. App. 3d 585, 600 (2003). An affiant need not have personally made the record; rather, the affiant must be familiar with the record and acquainted with the business and procedure at issue. *Lecroy v. Miller*, 272 Ill. App. 3d 925, 936 (1995). Here, the affidavit was sufficient because Cardenas averred that the loan records were kept and maintained by plaintiff in the regular course of business and were made at or near the time of the event, by a person with knowledge. She further averred that it was regular practice to keep the loan records, that she personally reviewed the records, and that she had personal knowledge of how the records were kept and maintained.

¶ 43    We agree with plaintiff. Cardenas's affidavit averred the following pertinent information: she was a vice president with plaintiff; in her capacity as vice president, she had access to plaintiff's business records relating to the loan; she reviewed the loan records and had personal knowledge of how they were kept and maintained; the loan records were maintained by plaintiff in the course of its regularly conducted business activities and were made at or near the time of the event, by a person with knowledge; and it was regular practice to keep records such as the loan records in the ordinary course of plaintiff's business activities. She also provided the specific amounts owing on the loan.

¶ 44    In *Bank of America, N.A. v. Land*, 2013 IL App (5th) 120283, ¶ 14, we held that the affidavit provided by the plaintiff-bank's assistant vice president, used to prove the balance due on the defendants' mortgage loan, was sufficient under Rule 236 where the affiant attested that: she was familiar with the bank's procedures for creating and maintaining business

---

[5]We note that as of January 1, 2011, the Illinois Rules of Evidence became effective, and they contain a hearsay exception for "Records of Regularly Conducted Activity." Ill. R. Evid. 803(6) (eff. Apr. 26, 2012). Nonetheless, the adoption of the rules of evidence relating to the admission of business records did not make any substantive changes to the requirements of Rule 236, and the case law developed under Rule 236 is still applicable to the admission of business records. *JPMorgan Chase Bank, N.A. v. East-West Logistics, L.L.C.*, 2014 IL App (1st) 121111, ¶ 99; see also Illinois Rules of Evidence, Committee Commentary (noting that Rule 803(6) retains the hearsay exception for business records under Rule 236 but removes the distinction between civil and criminal business records).

records; the loan records were made at or near the time of the relevant occurrence by persons with personal knowledge of the information in the records; the records were kept in the course of the bank's regularly conducted business activities; and it was the bank's regular practice to keep such records. Accordingly, the affidavit provided a sufficient basis upon which to conclude that the bank was entitled to judgment as a matter of law. *Id.*

¶ 45 In *Avdic*, 2014 IL App (1st) 121759, ¶ 26, the affidavit of a bank employee was sufficient to support summary judgment where she averred that: she had duties reviewing and analyzing loan records for the bank; she maintained records for each loan serviced; she was familiar with the defendant's loan; she had personal knowledge that it was within the regular course of business to record the information at issue at or near the time of the occurrence; and she identified the specific amounts owing on the loan. The foundational requirements for the records were twofold: (1) that the records were made in the regular course of business and (2) that the records were made at or near the time of the event or occurrence. *Id.* ¶ 23. These averments were sufficient to satisfy these foundational requirements, and the records were thus properly considered by the trial court in the entry of summary judgment in favor of the bank. *Id.* ¶ 30.

¶ 46 Here, Cardenas made averments virtually identical to those of the affiants in *Land* and *Avdic*. Her averments clearly satisfied the two foundational requirements under Rule 236. See, *e.g.*, *Gulino v. Economy Fire & Casualty Co.*, 2012 IL App (1st) 102429, ¶ 27 (Rule 236 requires the proponent of a business record to establish that the record was: (1) made in the regular course of business and (2) made at or near the time of the event or occurrence.). Because plaintiff's prove-up affidavit contained averments satisfying the foundational requirements of Rule 236, the trial court properly considered the affidavit and the attached loan documents and thus did not face an issue of material fact regarding the amounts owing on the loan. Accordingly, we affirm the trial court's entry of summary judgment for plaintiff.

¶ 47                                    III. CONCLUSION

¶ 48 For the aforementioned reasons, we affirm the judgment of the Du Page County circuit court.

¶ 49       Affirmed.