2024 IL App (1st) 220743-U
No. 1-22-0743

FIRST DIVISION
April 29, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

---

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR JPMORGAN MORTGAGE ACQUISITION TRUST 2006-CW1, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | No. 2020 CH 02162 |
| v. | ) ) | |
| TERENCE CHANCELLOR and DOROTHY CHANCELLOR, | ) ) ) | The Honorable Marian E. Perkins, |
| Defendant-Appellants. | ) | Judge Presiding. |

---

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Coghlan concurred in the judgment.

**ORDER**

*Held*: In this mortgage foreclosure action, we affirm the decision of the circuit court granting plaintiff summary judgment and confirming the judicial sale of the property, where the record is insufficient to assess any claims of error.

¶ 1 In this mortgage foreclosure action, defendant-appellants Terence and Dorothy Chancellor (defendants) appealed after the circuit court granted summary judgment in favor of plaintiff-appellee U.S. Bank National Association as Trustee for JPMorgan Mortgage Acquisition Trust

2006-CW1 ("U.S. Bank") and confirmed the subsequent judicial sale of the subject property. For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3        This action stems from a loan and mortgage executed by Terence Chancellor (Terence), the husband of Dorothy Chancellor. The record reflects that on February 17, 2006, Terence executed a promissory note in the amount of $189,000 to the original lender, Countrywide Home Loans, Inc. The note required him to make monthly payments of $1181.25 for the first 60 months, to be followed by monthly payments in the amount of $1396.69. On the same date, Terence executed a corresponding mortgage that encumbered the defendants' residence at 252 S. Ellis Avenue in Glenwood, Illinois (the property).

¶ 4        In February 2009, Terence executed a "Loan Modification Agreement (Step Rate") that identified Countrywide Home Loans Servicing LP (Countrywide) as the "Lender." The loan modification agreement stated that the initial monthly payment would be in the amount of $735.49, but that the "scheduled monthly payment may change on that day of every twelfth month thereafter" as set forth elsewhere in the agreement. The agreement elsewhere specified that the applicable interest rate would increase each year on March 1, the "Change Date", with a new monthly payment to be calculated by Countrywide. Notably, the copy of the loan modification agreement in the record reflects that it was signed by Terence on February 18, 2009. However, the signature block for Countrywide reflects that it was not executed until October 15, 2014 by Kenneth Hampton, identified as a "Document Control Officer."

¶ 5        A rider to the loan modification agreement recites the parties' understanding that "Borrower [Terence] was discharged in a Chapter 7 bankruptcy proceeding after the execution of the Note and Security Instruments" but that the loan modification agreement "does not affect the

discharge of Borrower's personal liability on the Note." That rider contains a signature by Terence dated February 18, 2009, but the document reflects that it was executed on October 15, 2014, by "Select Portfolio Servicing, Inc. as Attorney in Fact" for Countrywide.

¶ 6         On February 21, 2020, U.S. Bank filed a foreclosure complaint naming defendants, as well as "Unknown Tenants" and "Unknown Owners and Non-Record Claimants." According to the complaint, the loan was in default due to "the failure to make the March 1, 2010 and subsequent monthly installment payments due under the terms of the mortgage and note." Copies of the loan and mortgage were attached to U.S. Bank's complaint as Exhibits A and B. A copy of the loan modification agreement was attached as Exhibit C.

¶ 7         U.S. Bank's complaint also attached assignments reflecting that (1) in February 2012, the mortgage was assigned to "Bank of America, N.A., Successor by Merger to BA Home Loans Services, LP FKA Countrywide Home Loans Servicing LP" and (2) in September 2013, the mortgage was assigned to U.S. Bank.

¶ 8         Defendants represented themselves in trial court proceedings and remain *pro se* in this appeal. In March 2020, defendants filed an answer and a motion to dismiss alleging seven affirmative defenses. Among these, they alleged that U.S. Bank lacked standing and capacity to sue because the "Original Lender was Fremont Investment and Loan" and that the original date of mortgage was January 31, 2005. Thus, they alleged the complaint was a "fraud." They also alleged that when Countrywide solicited Terence for a refinance of his mortgage in 2006, it committed "predatory lending" and violated the "Truth in lending Act (TILA)." The motion to dismiss also stated that the mortgage "was the subject of a federal bankruptcy" filed by Terence in 2018 "of which Defendant[s] Mortgage amount due was discharged."

¶ 9 Another affirmative defense was entitled "Expiration of the 10 year Illinois Statute of Limitations." Defendants alleged that after Terence signed a loan modification agreement in February 2009, they "never made any additional payments on the step rate 2/5/2009 loan modification agreement after July 2009 because in August of 2009 Bank of America, the then loan servicer, offered Defendants a Making home affordable trial Payment Plan agreement of which Defendants accepted, with 3 payments required in the amount of $950 which were Completed in September 2009, October 2009, [and] November 2009." Defendants pleaded that "[a]s of March 23, 2020 there have been no payments made within the last 11+ years on the loan modification step rate agreement dated February 5, 2009 wherefore Plaintiff's Complaint is Time barred by the 10 year statute of limitation of contracts."

¶ 10 Defendants also asserted an affirmative defense of "unclean hands", insofar as the February 2009 loan rate modification "remained unexecuted for 5+ years until a servicer on behalf of Plaintiff [nominee] Select Portfolio Servicing document officer Kenneth Hampton, without Defendants consent and without clear authority executed the step rate note 5+ years later" in October 2014. In another affirmative defense, defendants alleged that they "received an offer from the new loan servicer Bank of America who offered Defendants a Making Homes Affordable Contract (TPP) trial payment plan contract which requires 3 consecutive payments of $950.00." Defendants pleaded that they made those payments in 2009, but U.S. Bank "did not comply with the Trial Payment Plan contract agreement."

¶ 11 The motion to dismiss attached several exhibits, including an August 2011 letter from the Office of the Illinois Attorney General reflecting that it was "reviewing [Terence's] complaint" regarding Bank of America. Defendants also attached a September 2011 letter from Bank of America in response to a complaint from Terence, which stated:

"In your correspondence, you stated that you have been trying to obtain a permanent modification since 2008 and in November 2010 Bank of America stated that the agreed trial payments of $930.00 would not be accepted [because] the investor JP Morgan/Chase does not participate in the Making Homes Affordable (MHA) program and/or The Attorney General (AG) program. You expressed dissatisfaction with the inquiry of your communication as well as with the level of customer service you received from Bank of America. You further expressed concern regarding not receiving a modification decline letter and your property being placed in foreclosure. * * *

   Our records indicate a modification was approved February 29, 2008 and in January 2009 your file was re-opened for loan modification due to your account being delinquent. Your file was approved in August 2009 for a trial payment plan for September 2009, October 2009 and November 2009. In September 2009 the modification agreement was received and it was notated that additional and/or updated financial information would be needed to proceed with permanent loan modification review. The information was received and your loan was referred to our MHA department in February 2010. In November 2010, a Bank of America representative informed you that your file was no longer in review as the investor did not participate in the MHA/AG loan modification

programs. On April 18, 2011 you were advised that your
modification was not a decline as the review was not completed
because the investor did not participate and on May 17, 2011 a Bank
of America representative stated that no official MHA decline letter
was sent."

¶ 12        The September 2011 letter stated that Bank of America had "opened yet another review of
your account for available modification options" and but told Terence that he needed to provide
updated financial information for Bank of America to be able to "review your loan for possible
modification."

¶ 13        U.S. Bank filed a response to the motion to dismiss in August 2020.  U.S. Bank argued that
defendants had not set forth facts with the requisite specificity for affirmative defenses of fraud or
unclean hands. U.S. Bank argued that letter from Bank of America did not support an affirmative
defense, as it merely stated that "Defendants were offered prior modification agreements."

¶ 14        Following a hearing, the court denied the motion to dismiss on September 30, 2020. In the
corresponding written order, the court noted that defendants were advised "to retain counsel and
will be provided with the 'Resource Guide for Self-Represented Litigants' by the Court."

¶ 15        On October 15, 2020, defendants filed a "Motion for an Entry of Final Order." In that
motion, they stated they had not been able to obtain counsel "after multiple efforts to find an
attorney to take a *forma pauperis* case." On October 16, 2020, the court denied the "Motion for an
Entry of a Final Order" but noted defendants had made an oral motion to reconsider the denial of
their motion to dismiss.  The court allowed briefing on the motion to reconsider.

¶ 16        Following briefing, on October 29, 2020 the trial court entered a written order again
denying defendants' motion to dismiss, noting that the court "heard oral arguments on all seven"

of the affirmative defenses. The trial court found that U.S. Bank had made a *prima facie* case of standing because its complaint attached the note indorsed in blank. The court directed defendants to answer the complaint.

¶ 17    In November 2020, defendants filed a motion asking the trial judge to recuse herself due to her "clear bias" against defendants.

¶ 18    Also in November 2020, defendants filed a "motion to vacate" the October 29, 2020 order. Among several arguments in that motion, defendants averred that they made "trial payments of $950 each for September 2009, October 2009, and November 2009" based on an agreement with the "prior loan servicer which turned out to be fraud." Defendants also maintained that the foreclosure action was time-barred because it was brought more than 10 years after their final mortgage payment. Attached to this motion was a Western Union receipt of a payment to Countrywide Home Loans dated July 2, 2009, which defendant labeled as the "Last Mortgage Payment." Defendants also submitted an affidavit in which Terrence stated that the "last mortgage note payment" was made on July 2, 2009.

¶ 19    On December 1, 2020, the motion for recusal was stricken without prejudice for want of prosecution. Three days later, defendant filed a "2nd motion for recusal" which was denied.

¶ 20    On December 24, 2020, the court denied defendants' motion to reconsider the October 2020 order denying their motion to dismiss. The court specified that defendants' "7 affirmative defenses are stricken with prejudice."

¶ 21    Notwithstanding that denial, in January 2021, defendants filed a motion to amend their motion to dismiss, which sought to add new allegations to their affirmative defenses. In support, Terence submitted an "Affidavit of Truth." In it, he asserted that he "was offered a step Loan Modification Agreement on February 5, 2009 by Countrywide Home Loan" that he signed in

February 2009, but "the agreement was not executed until 5 years later on October 15, 2014 by a non[-]employee of Countrywide." He again asserted the last payment on the note was on July 2, 2009.

¶ 22    Terence further averred that Bank of America subsequently offered him a "Making Homes Affordable HAMP Trial Payment Plan Agreement," which was to effect a permanent loan modification after he made three payments of $950 each in September 2009, October 2009, and November 2009.[1] He claimed that the payments were made but the agreement to modify the loan was not honored.[2] Terence also averred that due to his federal bankruptcy proceeding, "no additional mortgage payments [were] required" after August 2018.

¶ 23    In February 2021, defendants filed an answer and asserted eight affirmative defenses. In their answer, defendants denied the validity of the note and mortgage, denied the alleged March 2020 default, and asserted that any personal liability on the debt had been discharged through Terence's Chapter 7 bankruptcy proceeding. Their affirmative defenses included the seven previously asserted defenses, as well as a new allegation that they were not provided with proper notice of acceleration of the loan. In March 2020, U.S. Bank moved to strike the affirmative defenses.

¶ 24    On March 23, 2021, the trial court entered an order that permitted defendants' amendment to their motion to dismiss, but denied that amended motion. At the same time, the court struck each of the eight affirmative defenses with prejudice and directed defendant to issue written discovery. The record reflects that defendants issued discovery requests, to which U.S. Bank responded.

_____

[1] In subsequent submissions, defendants stated that the correct monthly payment amount was actually $930, not $950.

[2] Defendants stated that they subsequently sued Bank of America, JP Morgan Chase and Select Portfolio Servicing in federal court and entered into a settlement with Bank of America.

¶ 25    On July 12, 2021, defendants filed three separate motions to dismiss. The first motion asserted that U.S. Bank committed fraud by failing to honor an alleged "trial payment plan" agreement that was to permanently modify defendants' payment obligation to $930 per month, after defendants made three such payments in September 2009, October 2009, and November 2009.

¶ 26    In the same motion, defendant averred that they "did make the March 2010 payment" that was relied upon in the foreclosure complaint and that this payment was confirmed by documents produced in discovery. Defendants attached a Bank of America "home loan history statement with transaction details" addressed to Terence showing transactions over several years. These included a number of transactions in 2010, including March 2010, showing certain payments in the amount of $930 (which were labeled only as "Misc. Posting"), as well as payments in the amount of $1679.09 which were labeled as "Regular Payment." Defendants circled certain of these transactions and (in handwriting) labeled them as "HAMP Fraud Violation of the Trial Payment Plan Agreement." Defendant also submitted another affidavit from Terence in which he stated that U.S. Bank "was the entity that breached" the "promised trial payment plan (TPP) agreement by not allowing the modification to be completed" despite him making the three trial payments in 2009.

¶ 27    Defendants' second motion to dismiss asserted that three notices of default provided to defendants in 2014 were ineffective because they had been served by a non-party to the litigation, Select Portfolio Servicing, rather than by U.S. Bank. In a third motion, defendants claimed that Select Portfolio Servicing's employee, Kenneth Hampton, made several fraudulent statements about the mortgage. Defendants asserted, *inter alia*, that Hampton's execution of the step rate loan

modification on October 15, 2014, five years after Terence signed it in February 2009, was unauthorized and constituted fraud and "unclean hands."

¶ 28 On July 28, 2021, defendant filed three additional motions to dismiss on grounds that were substantially identical to those asserted in the three motions filed on July 12, 2021.

¶ 29 On August 3, 2021, the trial court entered an order reflecting that it had heard argument on defendants' motions to dismiss and denied the three motions filed on July 12, 2021. The court subsequently entered an order clarifying that it had also considered the three additional motions to dismiss filed on July 28, 2021, and similarly denied those motions.

¶ 30 On September 27, 2021, U.S. Bank moved for summary judgment and for judgment of foreclosure and sale. Although the record on appeal includes the notice of motion, the record does not contain the contents of the actual motion for summary judgment or any supporting memorandum, affidavits, or exhibits filed by U.S. Bank.

¶ 31 Defendants filed their response to the motion on November 12, 2021. In that response, defendants referred to the claims asserted in the July 28, 2021 motions to dismiss, including allegations of fraud and the alleged failure provide the required notice of acceleration. Defendants also maintained that documents from Bank of America proved that they had, in fact, made the requisite monthly payments "before and after March 1, 2010." There is no dispute that defendants did not submit any counteraffidavit in opposition to U.S. Bank's motion for summary judgment.

¶ 32 In December 2021, U.S. Bank filed a reply in which it argued that defendants' failure to file a counteraffidavit "result[ed] in the admission of the facts in [U.S. Bank's] affidavit that the loan was in default, the loan was properly accelerated, the date of the default, and the amount due and owing under the term of the Note and Mortgage." U.S. Bank further argued that a loan servicer may properly serve a notice of acceleration. Insofar as defendants claimed they made payments

before and after March 2010, U.S. Bank argued there were no supporting exhibits, and otherwise argued that "a borrower can make payments after the date of default and not advance the date of default."

¶ 33        On December 28, 2021, defendants filed a motion for leave to file a response to U.S. Bank's reply brief. In that filing, defendants suggested that any obligation to make the March 2010 monthly payment under the note had been discharged through Terence's bankruptcy case in 2018, such that foreclosure could not be premised on failure to make that payment. Defendants elsewhere acknowledged they had "not paid the mortgage in many years" but asserted the "lack of payments resulted from breach of the trial payment contract." Defendants also disputed the validity of notices of default sent by Select Portfolio Servicing.

¶ 34        The record on appeal does not contain any transcript of proceedings corresponding to the motion for summary judgment. On January 10, 2022, the trial court entered summary judgment in favor of U.S. Bank, as well as a judgment of foreclosure that specified that "by virtue of the mortgage and the affidavits presented as evidence of indebtedness," U.S. Bank had a valid lien on the property in the amounts "accounted for in the Affidavits filed by [U.S. Bank]."

¶ 35        U.S. Bank purchased the property at the subsequent foreclosure sale on April 11, 2022. On May 4, 2022, the court entered an order confirming the judicial sale and directing the sheriff to evict defendants from the property. The record on appeal does not contain any transcript of proceedings corresponding to the entry of that order.

¶ 36        Defendants filed a notice of appeal on May 24, 2022 using a preprinted form. In the space on the form asking to "List the date of every order or judgment you want to appeal", defendants listed only "May 4, 2022", corresponding to the date of the confirmation of judicial sale.

¶ 37    Defendants filed a common law record but did not file a report of proceedings containing any transcripts from the trial court proceedings. Defendants filed a docketing statement on June 10, 2022, in which they indicated that transcripts were not available and a "bystander report will be provided." Defendants drafted an "Appellants Bystander Report" that is inserted in their opening brief as their statement of facts, although there is no indication that it was ever provided to U.S. Bank for review, or that it was certified by the trial court. No other bystander's report is contained in the record on appeal.

¶ 38                                    ANALYSIS

¶ 39    For the following reasons, we are compelled to affirm the judgment of the circuit court.

¶ 40    First, we observe that defendants' *pro se* briefing is difficult to follow, largely because it does not comply with Supreme Court Rule 341 in several respects.[3] However, read liberally, defendants appear to challenge the entry of summary judgment on several alternative grounds.[4] Specifically, they suggest (1) the foreclosure complaint was untimely; (2) foreclosure was precluded by breach of a "trial payment plan agreement with Bank of America"; (3) the defendants did in fact make the March 2010 mortgage payment, as demonstrated by Bank of America documents; (4) defendants did not receive the required notice of default; and (5) Kenneth

---

[3] Among other violations of Rule 341, defendants' opening brief does not contain a statement of facts with proper citations to the record. See Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020) (A statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal."). Further, the one-page "Argument" portion of defendants' opening brief violates the requirement that argument "shall contain the contentions of the appellant and the reasons therefore, *with citation of the authorities and the pages of record relied on*." (Emphasis added.) Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

[4] Defendants' notice of appeal identified only the May 2022 order confirming the judicial sale; it did not list the prior orders granting summary judgment and entering a judgment of foreclosure. However, this court has held in similar circumstances that the failure to list prior orders in the notice of appeal does not deprive us of jurisdiction. See *CitiMortgage, Inc. v. Bukowski*, 2015 IL App (1st) 140780, ¶¶ 12-14 (rejecting foreclosure plaintiff's argument that dismissal was warranted because "the only order specified in defendants' notice of appeal was the order confirming the judicial sale," not the prior orders dismissing affirmative defenses and granting summary judgment to plaintiff).

Hampton, an employee of Select Portfolio Servicing, "presented himself as a Document Control for Countrywide while not being an employee of Countrywide Home Loan which is Fraud."

¶ 41    Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). Summary judgment in a mortgage foreclosure case is subject to *de novo* review. *U.S. Bank, Nat. Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 18. A mortgagee establishes a *prima facie* case for foreclosure with the introduction of the mortgage and note, after which the burden of proof shifts to the borrower to prove any affirmative defense. *PNC Bank, Nat. Ass'n v. Zubel*, 2014 IL App (1st) 130976, ¶ 18. Here, the record shows U.S. Bank established a *prima facie* case for foreclosure because its complaint attached the mortgage and note. The burden thus shifted to defendants "to prove any applicable affirmative defense." *Id.*

¶ 42    On the record before us, we cannot say the defendants proved any affirmative defense to avoid summary judgment. As appellants, it is "defendants' burden to present a sufficiently complete record to support their arguments and any inadequacies in the record will be held against them. [Citation.]" *Palm v. 2800 Lake Shore Condominium Ass'n*, 2014 IL App (1st) 111290, ¶ 108. Where an issue relates to the conduct of a hearing or proceeding, the issue is "not subject to review absent a report or record of the proceeding. Instead, absent a record, 'it [is] presumed that the order entered by the trial court [is] in conformity with the law and had a sufficient factual basis.' " *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001) (quoting *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984)).

¶ 43    This well-settled rule precludes defendants from successfully challenging summary judgment. This court has reviewed the 600+ page common law record on appeal. Although it

contains numerous filings, crucially, the record does not contain U.S. Bank's motion for summary judgment or the supporting affidavits relied upon by the trial court in granting summary judgment. Nor does it contain a report of proceedings from the relevant hearings. Further, we cannot consider the "Bystanders Report" contained in defendants' brief because it does not comply with governing Supreme Court Rule 323(c) (eff. July 1, 2017) and thus it is not part of the record on appeal.[5]

¶ 44    Without the ability to review the contents of U.S. Bank's submission in support of its motion for summary judgment or the content of any hearing, we are not in position to assess any error by the trial court in granting summary judgment. Instead, we must presume the judgment had a legal and factual basis. *Webster*, 195 Ill. 2d at 432.

¶ 45    We further note that "[f]acts contained in an affidavit in support of a motion for summary judgment which are not contradicted by counteraffidavit are admitted and must be taken as true for purpose of the motion." *U.S. Bank, Nat. Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 31. Although the record shows that defendants prepared various affidavits in support of earlier motions, there is nothing in the record to indicate that defendants submitted a counteraffidavit to oppose U.S. Bank's motion for summary judgment.

¶ 46    We note the record includes some documentation that appears to corroborate at least some of the defendants' factual claims, including the "trial payment plan" and a payment made on the loan in March 2010. It is apparent that defendants could have benefited from the assistance of counsel to present their arguments and evidence. This case is a good example of why *pro se*

_____

[5] Rule 323(c) contemplates that an appellant shall submit a proposed bystander's report to all parties "within 28 days after the notice of appeal is filed", after which appellees have 14 days to submit proposed amendments. *Id.* However, there is no dispute that defendants did not submit their proposed bystander's report to U.S. Bank. Moreover, Rule 323(c) calls for the appellant to "present the proposed report *** to the trial court for settlement and approval," after which the trial court "shall promptly settle, certify and order filed an accurate report of proceedings." *Id.* There is no indication that the trial court ever approved or certified the report drafted by defendants. "Absent stipulation, only the report of proceedings so certified shall be included in the record on appeal." Ill. S. Ct. R. 323(c) (eff. July 1, 2017).

litigants should take advantage of help services available at the trial level. However, given the state of the record and the briefs before us, we cannot assess whether there were meritorious defenses to foreclosure, and thus we cannot reverse the entry of summary judgment.

¶ 47    We also note that, to the extent that defendants seek to challenge the May 2022 confirmation of the judicial sale, the failure to include a transcript or other record of proceedings similarly precludes any finding of error. In any event, pursuant to section 15-1508 of the Mortgage Foreclosure law, "the circuit court shall confirm the sale of the property unless it finds that one of four grounds existed to disapprove the sale: '(i) a notice required in accordance with subsection (c) of Section 15-1507 was not given, (ii) the terms of the sale were unconscionable, (iii) the sale was conducted fraudulently, or (iv) justice was otherwise not done.' " *Deutsche Bank National Trust Company as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2004-WMC2 v. Cortez*, 2020 IL App (1st) 192234, ¶ 19 (quoting 735 ILCS 5/15-1508(b) (West 2018)). Nowhere does defendants' brief cite to this statutory provision or otherwise argue that one of the four bases therein precluded confirmation of the judicial sale. Thus, any challenge to the May 2022 order is otherwise forfeited. See Ill. S. Ct. R. 341(h)(7) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 48    In light of the foregoing, we need not further discuss the defendants' additional violations of Supreme Court Rules or the remaining contentions in the parties' briefs.

¶ 49                                   CONCLUSION

¶ 50    For the foregoing reasons, we affirm the circuit court orders granting summary judgment to U.S. Bank, entering a judgment of foreclosure, and confirming the judicial sale of the property.

¶ 51    Affirmed.